**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**SEPTEMBER 1999 SESSION**

FILED

November 24, 1999

Cecil Crowson, Jr.
Appellate Court Clerk



**CHARLES DWIGHT FARRAR,**   \*   C.C.A. #
01C01-9810-CC-00393

       Appellant,    \*   BEDFORD COUNTY

VS.                  \*   Honorable Thomas A. Smith, Judge

**STATE OF TENNESSEE,**    \*   (Post-Conviction Relief)

       Appellee.     \*

<u>FOR THE APPELLANT</u>:

HERSHELL KOGER
135 N. First Street, Suite E
Pulaski, TN 38478

<u>FOR THE APPELLEE</u>:

PAUL G. SUMMERS
Attorney General & Reporter

LUCIAN D. GEISE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM MICHAEL McCOWN
District Attorney General

ROBERT G. CRIGLER
Assistant District Attorney
One Public Square, Suite 300
Shelbyville, TN 37160

OPINION FILED: _____

      **AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

     The petitioner, Charles Dwight Farrar, appeals from the Bedford County

Circuit Court's order dismissing, after an evidentiary hearing, his petition for post-

conviction relief. The petitioner pled guilty to twelve counts and received an effective sentence of twenty years in the Tennessee Department of Correction. His petition alleged that he received ineffective assistance of counsel and that his plea was not knowing and willing. We AFFIRM the trial court's judgment.

## BACKGROUND

At a plea acceptance hearing and sentencing on March 17, 1997, the petitioner pled guilty to the following offenses and sentences:

(1) forgery, a Class E felony, for two years;
(2) burglary, a Class D felony, for three years;
(3) theft, a Class D felony, for three years;
(4) theft, a Class E felony, for two years;
(5) theft, a Class D felony, for four years;
(6) theft, a Class D felony, for four years;
(7) theft, a Class E felony, for one year;
(8) theft, a Class A misdemeanor, for eleven months, twenty-nine days;
(9) driving on a revoked license, a Class B misdemeanor, for six months;
(10) evading arrest in auto, a Class E felony, for two years;
(11) reckless endangerment, a Class E felony, for two years;
(12) reckless endangerment, a Class E felony, for one year;
(13) jail escape, a Class E felony, for two years; and
(14) vandalism, a Class E felony, for one year.

Counts one through five, counts eleven and twelve, and count fourteen were imposed consecutively, and the remaining counts concurrently, for an effective sentence of twenty years. Under the agreement, he was sentenced as a Range I offender, although he qualified for Range II status.

Dr. Pruett provided care for the petitioner at the Riverbend Maximum Security Institution. The record includes a letter stating the results of Dr. Pruett's evaluation, conducted at the petitioner's request, on January 12, 1997. At a deposition on August 3, 1998, Dr. Pruett testified that he evaluated the petitioner at the petitioner's request so that he could enter a plea. Dr. Pruett established that the petitioner understood the functions and roles of the judge, the jury, and other components of the legal system. Dr. Pruett further determined that the petitioner understood the nature of the charges and the consequences of his plea. Despite previous borderline personality diagnosis and micropsychotic episodes, the petitioner was competent. Specifically, Dr. Pruett noted that during the evaluation the petitioner exhibited neither homicidal ideation nor suicidal ideation nor any other form of psychosis.

At the sentencing hearing, the trial judge asked the petitioner if he had read the plea agreement. The petitioner answered that he had not read the agreement but that his attorney had read the pertinent documents to him and that he understood them. The petitioner further stated that he was satisfied with his representation, that he had no witnesses for a trial, and that his attorney maintained regular contact. This contact comprised telephone discussions and visits at both the jail and the penitentiary. The petitioner also stated to the trial judge, on his own and not through counsel, that he understood that he needed to request pre-trial sentence credits from the judge. These credits reduced his sentence by sixteen months.

The petitioner then filed a pro se petition for post-conviction relief and was appointed counsel. At the hearing on the petition, the petitioner testified to his history of unusual behavior. The petitioner further testified that on the morning of his pleas the Bedford County Sheriff had threatened to charge his wife for assisting him in escaping and fleeing law authorities if he did not accept the twenty-year sentence. However, he then testified that he thought he was agreeing to an eight-year sentence. The petitioner said that he had secretly stockpiled daily dosages of Thorazine until he had accumulated 1500 milligrams and that he had taken them the morning before his pleas because he was suicidal and depressed. He testified that he told his attorney at the hearing that he was over-medicated, and in his response his attorney said, "Don't worry about it, it will be all right." The petitioner claimed to remember some, but not all, portions of his testimony and statements under oath to the judge at the sentencing hearing.

Mr. Dearing, the petitioner's trial counsel, testified at the hearing that he had repeatedly contacted the petitioner: He had spoken with him while he was on bond, he had certainly spoken with him at the jail, and had phoned him "many more times than three." Mr. Dearing testified that he spoke with all the law enforcement officials involved in the various cases prior to the plea. He testified that he advised the petitioner that until the petitioner was declared competent the case would not return to the court. In 1996, the petitioner had been declared incompetent to stand trial, in that he did not understand the nature and

consequences of his charges and could not assist or advise his counsel. Dearing testified that he did not coerce the petitioner into entering the plea. Dearing also said that the petitioner contacted him after the sentencing hearing and asked if his assistance in solving some unsolved robberies would reduce his sentence.

Joe Carthon, an officer with the Tennessee Department of Correction, testified that he knew the petitioner for at least one year. As escort officer, Carthon was involved with transporting the petitioner to court on the day of the hearing. Carthon testified that the petitioner exhibited no signs of agitation or excessive anxiety on that date.

Dr. Rokeya Farooque, a psychiatrist and professor in the Department of Psychiatry at Meharry Medical College in Nashville, testified that she reviewed the written transcript and records of the sentencing and plea hearings and evaluated the petitioner in August 1997. Dr. Farooque testified that a person without tolerance for Thorazine who takes 1500 milligrams of that drug exhibits side effects: extreme grogginess; inability to stay awake; and little, if any, ability to rationally communicate. She testified that despite the petitioner's claim that he had taken the drug on the date in question, the record evidences his active and lucid participation rather than any dysfunction. For example, Farooque noted the trial court's inquiry, "During that time you have discussed with Mr. Dearing and he has discussed with you the possible defenses, if any, you might have to all of the cases that you have pled guilty to?," to which the petitioner responded, "Could you say that again, Your Honor?" The judge repeated the question, albeit somewhat modified, after which the petitioner answered in the affirmative. Farooque distinguished this exchange from that expected of one under the influence of Thorazine, in which a simple "yes" or "no" would be expected.

**ANALYSIS**

The petitioner asserts that the trial court erred by dismissing his petition for post-conviction relief. That petition asserted that the petitioner's counsel was

ineffective and that the petitioner did not knowingly and willingly enter his pleas.[1] The trial court denied the petition after a hearing. A petitioner bears the burden of proving his factual allegations by a preponderance of the evidence. See Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988).

*Ineffective Assistance of Counsel*

A petitioner seeking relief because of ineffective assistance of counsel must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W. 23 930, 936 (Tenn. 1975); see also Strickland v. Washington, 466 U.S. at 668 (1984). The petitioner must then demonstrate that the alleged deficiencies "actually had an adverse effect on the defense." Strickland, 466 U.S. at 693. A reasonable probability must exist that but for counsel's error the result of the proceeding would have been different. Id. at 694. The petitioner must establish both factors. Moreover, on appeal the findings of fact established by the trial court are conclusive, and this Court will not disturb these findings unless the evidence contained in the record preponderates against them. See Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). Further, failure of a particular strategy or tactic pursued by defense counsel does not establish ineffective assistance of counsel. This Court must defer to trial strategy and tactical choices based on adequate preparation. See id. at 60-61; Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The trial court credited the testimony for the petitioner's trial counsel, finding that counsel adequately investigated the cases and acted reasonably in preparing defense. He interviewed witnesses identified by the petitioner and concluded in most cases that their testimony was adverse. Similarly, the trial court found that none of the witnesses could actually provide exculpatory evidence. The trial court determined that the counsel's performance exceeded the applicable standards. Further, the petitioner's statements at the sentencing hearing and plea acceptance hearing indicate that the petitioner was satisfied

---

[1] The actual petition comprised eight separate allegations, which the petitioner's counsel at the evidentiary hearing characterized as falling within these two general categories.

with counsel's performance. This Court also notes that counsel testified at the hearing that he maintained contact with the petitioner.

The petitioner offers only his uncorroborated testimony in support of his allegations of ineffectiveness. He has not satisfied the burden of proof necessary for reversal.

*Knowing and Willing Plea*

The petitioner's assertions regarding his "knowingly and willingly" offering his pleas comprise two primary issues: alleged Thorazine over-medication on the day in question and his misunderstanding of the proceedings. The trial court found that even if the petitioner had consumed the 1500 milligrams of Thorazine as claimed, Dr. Farooque's testimony compelled the conclusion that any such medication did not prevent the petitioner from understanding the proceedings. Further, that court noted counsel's testimony that the petitioner did not seem under an influence. Counsel also denied being told by the petitioner that he was over-medicated.

Also, the petitioner asserted that he was coerced by his attorney into entering the pleas. Counsel testified that he did not coerce the petitioner. Further, under direct questioning during the sentencing hearing, the trial judge established that the petitioner had not been coerced to enter the pleas.

We have reviewed the sentencing hearing records provided to this Court and noted the petitioner's participation. The petitioner testified under oath that he understood the proceedings and agreed with the sentences. At one point, the judge asked him if he had read the plea agreement, and the petitioner corrected the judge: He had not read the agreement, but counsel had read to him the pertinent documents and he understood their contents. The petitioner also, at two points in that proceeding, requested that the judge address the issue of pre-trial credits and sentence reduction. He made these inquiries personally and not through counsel. The trial court correctly found that the petitioner was an active

and knowing participant in his plea agreements. We do not find the requisite proof necessary to interfere with the trial court's judgment.

-7-

## CONCLUSION

We AFFIRM the trial court's order dismissing the petition.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
DAVID H. WELLES, Judge