IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 16, 2025

## KEINESA LILLARD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2018-C-1845    Cynthia Chappell, Judge**

_____

### No. M2024-01502-CCA-R3-PC

_____

The Petitioner, Keinesa Lillard, appeals the Davidson County Criminal Court's denial of her petition for post-conviction relief challenging her convictions for attempted second degree murder, employing a firearm during the commission of a dangerous felony, especially aggravated robbery, evading arrest by use of a motor vehicle involving risk of death or serious bodily injury to others, and four counts of simple possession of a controlled substance. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on her claim that she received ineffective assistance of trial counsel. Specifically, the Petitioner argues that trial counsel was ineffective for (1) failing to communicate with her regarding the State's proof; (2) failing to review discovery materials with her; and (3) failing to discuss pretrial motions and strategy with her. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Jesse Lords, Elmwood, Tennessee, for the appellant, Keinesa Lillard.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Colemen, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Pretrial, Trial, and Direct Appeal Proceedings[1]

On the afternoon of April 25, 2018, the Petitioner approached the victim, James Counter, while he was in his vehicle. *State v. Lillard*, No. M2020-01569-CCA-R3-CD, 2022 WL 628467, at *1 (Tenn. Crim. App. Mar. 4, 2022), *perm. app. denied* (Tenn. July 14, 2022). The victim heard a "metallic tap" on his window and turned to see the Petitioner pointing a gun at him. *Id.* The victim exited his vehicle and gave the Petitioner $490 from his wallet. *Id.* She then indicated that she wanted the victim's wallet as well. *Id.* When the victim extended his arms and asked her to reconsider taking his wallet, the Petitioner shot him "at point-blank range" in the torso. *Id.*

Detective Tyler Conrads with the Metro Nashville Police Department was made aware of the shooting and received a description of "a possible suspect and vehicle." *Id.* at *2. Later that afternoon, Det. Conrads received a dispatch advising him of a vehicle driving aggressively that matched the description of the vehicle involved in the shooting earlier that day. *Id.* Det. Conrads observed the Petitioner in the vehicle and eventually activated his vehicle's emergency equipment to initiate a traffic stop. *Id.* The Petitioner fled, driving into oncoming traffic at a high rate of speed. *Id.* Eventually, the Petitioner stopped her vehicle, and officers blocked off the streets to prevent the Petitioner from leaving. *Id.* Upon taking her into custody, law enforcement discovered marijuana, cocaine, Xanax, and Percocet on her person, as well as marijuana, cocaine, and a nine-millimeter handgun inside her vehicle. *Id.* Testing revealed that a bullet casing found at the scene of the shooting matched this handgun. *Id.* at *2-3.

As a result of the shooting, the victim sustained extensive injuries and "underwent three surgeries to repair damage to his small intestine, stomach, adrenal gland, kidney, gallbladder, and vena cava vein, as well as to remove a portion of his liver." *Id.* at *2. These operations left the victim with a twenty-inch scar on his chest, and he spent fourteen days in the Intensive Care Unit at Vanderbilt, fifteen days in a wound care specialty hospital, and another five days "in the care of a surgeon in his home state of Wisconsin."

---

[1] To assist in the resolution of these proceedings, we take judicial notice of the record from the Petitioner's direct appeal. *See* Tenn. R. App. P. 13(c); *e.g.*, *Harris v. State*, 301 S.W.3d 141, 147 n.4 (Tenn. 2010) (noting that an appellate court may take judicial notice of its own records).

*Id.*  He also "continue[d] to suffer numerous residual effects from the shooting, including dizziness, vertigo, loss of strength, PTSD, and anxiety."  *Id.*

A Davidson County grand jury indicted the Petitioner on one count of attempted first degree murder, one count of employing a firearm during the commission of a dangerous felony, one count of especially aggravated robbery, one count of evading arrest by use of a motor vehicle involving risk of death or serious bodily injury to others, and four counts of simple possession of a controlled substance.  *Id.* at *1.  Prior to trial, the Petitioner pled guilty to all counts except for attempted first degree murder and employing a firearm during the commission of a dangerous felony.  At trial, the jury convicted the Petitioner of attempted second degree murder, a lesser included offense, and employing a firearm during the commission of a dangerous felony, as charged.  *Id.* at *3.  The trial court imposed an effective sentence of thirty-two years to be served in the Tennessee Department of Correction.[2]  *Id.*  This court affirmed the judgments of the trial court on direct appeal.  *Id.* at *10.

### B.      Post-Conviction Proceedings

The Petitioner filed a timely pro se petition for post-conviction relief in May 2023, which was not included in the record, and appointed counsel filed an amended petition in April 2024.  As relevant to this appeal, the Petitioner alleged therein that her trial counsel was ineffective for failing to communicate with her regarding discovery and pretrial motions.

At the post-conviction hearing, the Petitioner testified that she did not communicate much with trial counsel leading up to trial.  She acknowledged that she received a copy of discovery but stated that trial counsel did not review this discovery with her or answer any questions that she had about it.  She also testified that she lacked knowledge about any pretrial motions.  However, on cross-examination, she acknowledged that she was aware of trial counsel's filing bond motions and numerous motions *in limine*.  She could not recall any pretrial motions she wanted filed that were not filed.  She also acknowledged that she understood the trial strategy to be demonstrating her accountability by noting that she had pled guilty to certain offenses related to this incident.  Additionally, the Petitioner testified that trial counsel advised her to take the State's offer on the especially aggravated robbery charge because it would limit the sentence to fifteen years.  Despite acknowledging on

---

[2] The Petitioner's sentence was reduced to an effective sentence of thirty-one years in confinement following this court's previous holding that she should have received a mandatory minimum six-year sentence for employing a firearm during the commission of a dangerous felony.  *Id*. at *10.

- 3 -

cross-examination that she knew the sentencing range for the offense was fifteen to twenty-five years and that her sentence would be determined at the sentencing hearing, she was adamant that she did not know that the fifteen-year sentence was not guaranteed.

Trial counsel testified that she had been practicing criminal defense law since 2013. She stated that she had numerous communications with the Petitioner regarding discovery and pretrial motions. Regarding strategy, trial counsel explained that she and her co-counsel proposed to the Petitioner that "she own what was hers and contest what was not." Trial counsel stated that she believed she and her co-counsel "did everything we possibly could to get the best outcome, given the options we had." Additionally, trial counsel testified that she explained to the Petitioner that, although she and her co-counsel were optimistic that the Petitioner would be sentenced on the low end of the sentencing range for especially aggravated robbery, the offense had a sentencing range of fifteen to twenty-five years and the sentence would be set by the judge.

The post-conviction court denied relief. It found that the Petitioner failed to meet her burden, as there was no clear and convincing evidence that trial counsel's representation was deficient or that the Petitioner was prejudiced by any alleged deficiency.

This timely appeal followed.

## II.    ANALYSIS

On appeal, the Petitioner argues the post-conviction court erred by denying her petition based upon its finding that she received effective assistance of trial counsel. The Petitioner asserts trial counsel was ineffective for (1) failing to communicate with her about the State's proof; (2) failing to review discovery materials with her; and (3) failing to discuss strategy and pretrial motions with her. The State contends the Petitioner has failed to establish trial counsel's deficient performance and prejudice.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. *Id.* § -110(f); *see also Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "[Q]uestions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn.

2001). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Id.* Because they relate to mixed questions of law and fact, the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial are reviewed under a de novo standard with no presumption of correctness. *Id.* at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," and reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the court has different considerations for convictions that resulted from trial and those that resulted from guilty pleas. Regarding convictions resulting from trial, the petitioner must establish "a reasonable probability that[,] but for counsel's errors[,] the result of the proceeding would have been different." *Vaughn v.*

*State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That is, the petitioner must establish that [] counsel's deficient performance was of such a degree that it deprived [the petitioner] of a fair trial and called into question the reliability of the outcome." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

In the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). However, we note that a petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

> A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admission of guilt stand as a witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

*Camacho v. State*, No. M2008-00410-CCA-R3-PC, 2009 WL 2567715, at *7 (Tenn. Crim. App. Aug. 18, 2009).

Here, trial counsel testified to several occasions in which she communicated with the Petitioner about her case, including reviewing discovery, discussing pretrial motions, and discussing strategy. The Petitioner acknowledged that she received a copy of discovery and was aware of the pretrial motions that counsel filed, and she was unable to provide any additional pretrial motions that she wanted filed. Additionally, trial counsel testified that she explained the trial strategy to the Petitioner, and the Petitioner acknowledged that she was aware the strategy involved showing that she had taken accountability for certain offenses related to the incident. In denying relief, the post-conviction court specifically accredited the testimony of trial counsel over that of the Petitioner. Nothing in the record preponderates against the post-conviction court's findings in this regard. Accordingly, the Petitioner has failed to prove that trial counsel was deficient. *See Strickland*, 466 U.S. at 688.

As an ineffective assistance of counsel claim requires the Petitioner to prove both prongs of *Strickland*, the Petitioner's failure to establish deficiency is sufficient for the court to deny relief. *See Goad*, 938 S.W.2d at 370. On appeal, the Petitioner does not argue that she suffered prejudice as to the counts on which she proceeded to trial, nor does she argue, regarding her guilty-pled counts, that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59. As a result, even if the Petitioner had been able to establish trial counsel's deficient performance, her failure to establish prejudice would still cause her claim to fail under *Strickland*. For these reasons, she is not entitled to relief.

### III. CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE